## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STEPHEN SALAKA,**

         **Plaintiff,**

**-vs-**                                  **Case No.  6:14-cv-1154-Orl-40DAB**

**LIVE MUSIC TUTOR, INC.,**
**TED GEE, TODD LEE, and**
**NATHANIEL FRIENDS, SR.,**

         **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT (Doc. No. 50)** |
| **FILED:** | **November 9, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

### I. Background

      Plaintiff, Stephen Salaka, filed this action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and for other relief, arising out of an alleged employment relationship with Defendant Live Music Tutor, Inc. (Doc. 1). Plaintiff filed an Amended Complaint on September 16, 2014, which alleges the following claims: an FLSA minimum wage violation (Count I); violation of the FLSA overtime provisions (Count II); common law claim for breach of contract and unpaid wages (Count III); violation of Florida's Minimum Wage Act (Count IV); and

unjust enrichment (Count V) (Doc. 10). Defendants answered the Amended Complaint (Doc. 18) and discovery commenced. Following the close of discovery, Defendants filed the instant motion, with supporting exhibits.  The parties have also filed a Joint Stipulation of Agreed Material Facts, with supporting exhibits (Doc. 52).  Plaintiff has filed his Memorandum in opposition to the motion (Doc. 53), and Defendants have filed a Reply brief (Doc. 54). On January 4, 2016, the matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation. Upon review of the arguments and evidence presented and the applicable law, it is **respectfully recommended** that the motion be **denied, as set forth herein.**

### III.  The Allegations of the Complaint and Factual Background

Although the parties disagree on many factual matters, including the interpretation of certain documents, they have submitted a Joint Stipulation of Agreed Material Facts (Doc. 52), which the Court takes to be true, for present purposes.  By way of summary, the parties agree that Live Music Tutor, Inc. ("LMT") is a Florida corporation incorporated on September 1, 2012; Defendant, Ted Gee ("GEE") is a co-founder of LMT and also serves as the CEO and President; at all times relevant, Defendant, Todd Lee ("LEE") held the title of Vice President of Operations for LMT; and Defendant, Nathaniel Friends, Sr. held the title of General Counsel. Defendant GEE holds the largest share of equity in the company, and provided most of its funding. LMT is a technology company providing an online product which would support live, real-time interactive music education over the internet. LMT had their base product developed overseas and it was not market ready when it was brought onshore.

*Plaintiff is recruited*

On or about October 28, 2012, Plaintiff was first contacted by Carl Sharperson regarding LMT.  On October 30, 2012, Mr. Sharperson sent Plaintiff the LMT Confidentiality Agreement to

execute (Doc. 52-5). This agreement, along with a copy of the signed signature page, was emailed

back to Mr. Sharperson by Plaintiff. Mr. Sharperson was given equity in the form of shares in LMT

for recruiting Plaintiff. It is unclear what consideration, if any, was given to Plaintiff.

On or about November 5, 2012, Plaintiff and GEE met to discuss working for LMT.

Following his meeting with Plaintiff, on November 9, 2012, GEE emailed Defendants LEE and

FRIENDS Plaintiff's resume and a note stating,

> Here is the information for Stephen. We are talking with him about leading
> engineering. Richard [Lamberty] may report to him. We need someone that is
> technically sound and can help us advance our platform from where it is today to
> where we are going in the future.

(Doc. 52-6).

On November 17, 2012, GEE sent an email to Plaintiff with an attachment titled, "LMT

Employment Master Letter rev 5.dox". The email stated:

> Stephen
> I would like to check your availability for late tomorrow afternoon to recovene [sic]
> and discuss moving forward. I am attaching a copy of the framework without the
> compensation for your review. I would like for you to provide your salary expectations
> prior to funding, (which will be deferred and accrued based on availablle [sic] time
> and contributions) and post funding expectations. We look forward to working with
> you and a long term mutually beneficial relationship. I believe that you can be a
> valuable assett [sic] to our team and that we are at the right time and rigth [sic] place
> for something very special.
> Thanks

(Doc. 52-7). Attached to the email is an incomplete draft agreement of an "employment offer,"[1] dated

October 24, 2012 (Doc. 52-7, p. 2-3). Importantly, **there is no signed copy of this agreement, or any**

**written employment agreement, in evidence.** The parties have stipulated that:

> Although neither party was able to provide the signed copy of the "initial agreement"
> between the parties, both parties testified in deposition that the agreement dated

---

[1]The parties dispute whether this was an employment offer or a consultant agreement and the document is
incomplete and unexecuted. For present purposes, the language of the document is descriptive. Above the signature line is
the phrase: "I have read and accept this employment offer from Live Music Tutor Inc."  (Doc. 52-7 at 3).

October 24th, 2012 and identified as the "initial agreement" was fully executed. The parties executed the "initial agreement," which was originally dated October 24, 2012 sometime during the month of December 2012 (Gee Dep. 39:7 – 24, ECF No. 50, Ex. 1) (Salaka Dep. 14:3 – 11, ECF No. 50, Ex. 2) (ECF No. 50, Ex. 5)

(Doc. 52, ¶ 42).

*Plaintiff begins working*

Following the November 17 email, Plaintiff began his association with Defendants in earnest. On November 19, 2012, GEE sent an email to several people, including Plaintiff, which provided, in part: "I would like to welcome Stephen Salaka who will be responsible for the engineering portion of the team." (Doc. 52-8).  Plaintiff was added to "Friday leadership and daily ops meetings," the first of which, a "Daily Staffing Progress quick call" was set to take place on November 20, 2012. Thereafter, Plaintiff reached out to the leaders at LMT to discuss the current systems and processes utilized in the business.  On November 21, 2012, GEE replied to Plaintiff's email providing photographs for the LMT website. GEE wrote, "Stephen This will work. Glad to have you on board. Lets talk over the weekend to solidify your agreement. Thanks" (Doc. 52-11).  On November 24, 2012, GEE sent out an email to LMT that included leadership biographies and an organizational chart for LMT. This organizational chart depicts Plaintiff as head of engineering and technology (Doc. 52-12).

On November 27, 2012, Plaintiff met with GEE and others at the Orange County library in downtown Orlando to go through GEE's "intent, and strategy discussions for Engineering."  On November 29, 2012, GEE sent an email to the leadership team, including Plaintiff. The email also discussed an upcoming leadership meeting in Milwaukee, Wisconsin, which was to be held on December 11, 2012 (Doc. 52-14). On January 3, 2013, LMT filed its 2013 Annual Report with the Secretary Of State. The report lists GEE as President, SALAKA and LEE as Vice Presidents, and FRIENDS as General Counsel (Doc. 52-17).

*Plaintiff's duties*

Conference calls with LMT were a daily occurrence for Plaintiff. Plaintiff was required to attend telephonic daily leadership meetings at times set by LMT, usually in the early morning or end of the workday. These conference calls began as early as November 2012, and continued throughout 2013. These conferences typically included the LMT leadership staff, including Plaintiff, GEE, and LEE. Plaintiff was also involved in conferences with LMT's external contractors, as part of his role leading the engineering of LMT's product.

The parties agree that Plaintiff was engaged by LMT, based on his expertise, education, and experience in software, specifically to help LMT with the movement and the progression of the system and business from a software perspective. Plaintiff's role within LMT was to create the business strategy for the organization, as well as to create a project plan for LMT. Further, he was to oversee the software development side of LMT's product. Plaintiff testified that he was able to utilize his best judgment and initiative in determining how to fulfill the projects, however he would take direction from GEE and LEE, as well as other members of the LMT leadership team, in terms of when things needed to be complete, corrected, or fixed.

Plaintiff maintained and worked from a home office, which was used as a federal tax deduction. Plaintiff paid all expenses associated with the home office including utilities, telephone, Internet access, computers, printers, and office supplies (including printer paper and ink). Plaintiff was required to attend daily meetings as well as lead daily meetings at specific times during the day. Outside of those meetings, Plaintiff had flexibility in terms of his work hours, as long as deadlines were met.

LMT contracted with a number of external vendors or contract developers during Plaintiff's tenure. The contracts were reviewed by LMT's CEO, GEE and General Counsel, FRIENDS. Their

fees were negotiated by LMT and services were provided for the benefit of LMT. On occasion, Plaintiff would be included in negotiations of those contracts; however GEE was the individual who needed to sign off on the contracts. For developers who provided services under the umbrella of software engineering, Plaintiff would act as their point of contact with LMT.

On December 1, 2012, GEE sent out an email to several individuals with an attachment entitled, "LMT Employee Inv & Rights Agree (1).docx". GEE indicated that LMT needed the document signed and returned to LMT's General Counsel, FRIENDS, by December 3, 2012. The agreement provided, in part:

> In return for my new or continued consulting or employment by the Company, I acknowledge and agree that:
> At-Will Employment; No Conflict. I will perform for the Company such duties as may be designated by the Company from time to time. I agree that my employment with the Company is for no specified term, and may be terminated by the Company at any time, with or without cause, and with or without notice. Similarly, I may terminate my employment with the Company at any time, with or without cause and with or without notice. During my period of employment by the Company, I will devote my best efforts to the interests of the Company and will not engage in other employment or in any activities determined by the Company to be detrimental to the best interests of the Company without the prior written consent of the Company.

(Doc. 52-15).

On December 3, 2012, Plaintiff returned the executed signature pages to GEE and FRIENDS, as requested.

*Further developments*

According to the stipulated facts, Plaintiff requested that an addition of $1,000.00 per week be added to the initial agreement. GEE agreed and asked SALAKA to insert that term into the agreement and send GEE the revised agreement. The additional term provided for the pay to be deferred. *See* Doc. 50-5. **No executed copy of this revised document is in evidence.**

As early as January 2013, Plaintiff spoke to GEE about needing money. On February 1, 2013, GEE sent an email containing the story of "The Little Red Hen" to his leadership team, including

Plaintiff. In the email, GEE states that Plaintiff had been working for LMT "around the clock, 7 days a week." (Doc. 52-20).

On March 6, 2013, GEE sent an email to Plaintiff, with a letter dated March 5, 2013 attached. GEE states in his email, "… I am attaching an updated agreement with the additional shares I promised to you and also salary information. All of the leadership team will have consistent language and content with key responsibilities. Please review and lets discuss." (Doc. 52-21). Plaintiff has attached an unsigned copy of the March 5, 2013 letter to his Amended Complaint (Doc. 10, pp. 20-22), and alleges that he "accepted the March 5, 2013 offer." (Doc. 10, ¶27). **Neither party has produced an executed copy of the March 5, 2013 document.** Plaintiff testified that he believed that he had signed a letter dated March 5, 2013, but he did not recall receiving a signature from Defendant GEE.  Defendant GEE testified that the document dated March 5, 2013, was a draft document for Plaintiff SALAKA's review and was never executed. It is undisputed that Plaintiff was never paid under the terms and conditions of the document dated March 5, 2013.

In April 2013, Plaintiff looked for work outside LMT at the suggestion of GEE. Plaintiff sought to find paying work to feed his family. At this time, Plaintiff states that he was only looking for part-time consulting work to subsidize his expenses.  In June 2013, Plaintiff needed to reduce his commitment with LMT to provide money for his family. Plaintiff assured LMT that he would still be available for meetings, to oversee the technical guidance, and consulting on the engineering piece, however day-to-day activities would be limited. On April 8, 2014, FRIENDS, as "VP and General Counsel" for LMT, filed Articles of Amendment to remove Plaintiff as Vice President of LMT. (Doc. 52-24).

LMT states that it does not have, nor has it ever had, any employees. Instead, LMT states that it has two types of independent contractors; internal and external. According to LMT, the external independent contractors have agreements where LMT would pay them X dollars for X work during

a specific time period. Sometimes these external independent contractors were also referred to as, "paid vendors" or "external vendors." LMT takes the position that Plaintiff was an "internal Live Music Tutor independent consultant under agreement," who exited the company prior to the issuance of any stock.

The parties agree that, to date, LMT has not paid Plaintiff anything for his services provided for the benefit of LMT, nor have they reimbursed him for verified expense incurred on behalf of LMT. Plaintiff was never provided any stock or stock options and he holds no equity in LMT.

## II. Legal Standard

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). *See Strickland v. Norfolk S. Ry. Co.,* 692 F.3d 1151, 1154 (11th Cir. 2012). A movant carries this burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.2006). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Which facts are material depends on the underlying substantive law. *Id.*

In evaluating the motion, the Court is to view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). It is not the court's role, however, to weigh conflicting evidence or to make credibility determinations. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996); *see also, e.g., Strickland*, 692 F.3d at 1154 ("Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ...." (internal quotation marks omitted)).

## IV. Analysis

Plaintiff has pled claims under FLSA, Florida's Minimum Wage Act, breach of contract and unjust enrichment.  The Court treats each count in turn.

*The FLSA counts (Counts I and II)*

Plaintiff alleges that Defendant violated 29 U.S.C. § 206, the federal minimum wage provision, by failing to compensate the Plaintiff at a rate not less than $7.25 an hour  (Doc. 10, ¶ 43). He further alleges that LMT violated FLSA in not paying him overtime at a rate of one and one half times his hourly rate of pay (which he claims to be approximately $84.15 per hour), as a salaried, non exempt employee of LMT from November 2012 through September 2013 (Doc. 10, ¶¶ 49-53). Defendants deny these allegations (Doc. 18).

As the Eleventh Circuit has observed:

> In general, work constitutes employment when there is an expectation of in-kind benefits in exchange for services. See *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 301 & 303-04, 105 S.Ct. 1953, 1961 & 1962-63, 85 L.Ed.2d 278 (1985).

> The minimum wage provisions of the FLSA apply only to workers who are "employees" within the meaning of the Act. 29 U.S.C.§ 206(a)(1). Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C.§ 203(e)(1). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,...." 29 U.S.C.§ 203(d). To "employ" is defined as to "suffer or permit to work." 29 U.S.C.§ 203(g). The Supreme Court has held that courts should apply these terms in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936-37, 6 L.Ed.2d 100 (1961).

*Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  "It is dependence that indicates employee status." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013) (internal citation omitted). Courts consider several factors, such as (1) degree of control, (2) opportunity for

profit or loss, (3) investment in equipment or additional personnel required, (4) whether special skills are required, (5) duration of the working relationship, and (6) the extent to which the service is integral to the alleged employer's business, and no single factor is determinative. *Id.* "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Scantland,* quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301-02 (5th Cir.1975).

The FLSA's wage and overtime provisions apply to employees, but not independent contractors. *Perdomo v. Ask 4 Realty & Mgmt, Inc.*, 298 F. App'x 820, 821 (11th Cir. 2008). Further, a determination of employment status under the FLSA is a question of law. *Id.*

The parties do not disagree on the requirements of FLSA and they acknowledge that FLSA does not apply to independent contractors.  At issue is whether Plaintiff is an "employee" as defined by FLSA, or an independent contractor, not subject to the FLSA.  According to Defendants:

> Plaintiff entered into an association with LMT to provide consulting services in exchange for a "to be determined" number of shares of stock in the company and a deferred compensation rate of one thousand dollars ($1,000.00) per week which would be in effect until the company received the Series A funding necessary to provide regular employment or the relationship was terminated. Plaintiff disengaged with LMT when he no longer had the financial reserves necessary to be without a source of income and found a full time employment position. . . . [H]e relied on the promise of equity / ownership in the company and provided sweat equity as a capital contribution. Plaintiff was not an employee covered under the FLSA and therefore the Court should dismiss Count I and Count II of the Amended Complaint and grant Defendant's Motion for Summary Judgment.
> (Doc. 54).

Plaintiff counters that he was an employee.  He worked at LMT as its Vice President but received no compensation, was provided no equity in the company, nor was he reimbursed for any verified expenses (Doc. 53).  Plaintiff maintains he was hired pursuant to a contract and is entitled to overtime damages at that contract rate.[2]

---

[2]According to the Joint Stipulation, "56. Plaintiff is relying on the document dated March 5, 2013 for Count II (FLSA Overtime) and Count III (Breach of Contract / Unpaid Wage) which was [] attached to Plaintiff's Amended Complaint as Exhibit D. (Amm. Compl., ECF No.10, Ex. D)." (Doc. 52).

Applying the factors set forth above and viewing the evidence in the light most favorable to Plaintiff, the non-moving party, the Court cannot find as a matter of law that Plaintiff was an independent contractor.

1) Nature and Degree of Control

The relevant inquiry here is whether LMT exercised such a significant level of control over Plaintiff that he did not stand as a "separate economic entit[y] ... in business for [himself]." *Scantland,* 721 F. 3d at 1313. Although Defendants contend that Plaintiff was not given scheduled hours, worked at home, and was self-directed in how to accomplish the final product, the Court cannot agree with their claim that "LMT had no control over Plaintiff." As Plaintiff points out, he was required to attend daily meetings at times set by LMT, was required to oversee external contractors, and, while he enjoyed some flexibility in the  manner of completing his assigned tasks, the work was subject to the direction from GEE and LEE, as well as other members of the LMT leadership team "in terms of when things needed to be complete, corrected, or fixed."  Assuming factual inferences in Plaintiff's favor, the Court cannot find that the agreed facts point overwhelmingly in favor of independent status.

2) Opportunity for Profit or Loss

The second factor considers consider the degree to which the alleged employee's opportunity for profit and loss is determined by the alleged employer.  LMT argues that Plaintiff's work was "crucial to LMT's profit/loss" in that he was responsible for managing and coordinating the efforts of the other development consultants to get the product market ready, online, and available to consumers and "[t]he sooner he completed the objectives of his engagement, the sooner the product would generate revenue and provide profit." (Doc. 50). Although LMT contends that "SALAKA's profit/loss was dependent on LMT's profit/loss," this is not the appropriate inquiry.  At issue is whether Plaintiff had the opportunity for increased profits due to his own managerial or

entrepreneurial efforts.  As noted in his brief, Plaintiff had no opportunity to earn additional income or profit through his management of the contractors.  Moreover, a contention that Plaintiff had the power to accomplish his objectives "sooner" goes to efficiency of the existing task; it is not a showing that Plaintiff had the power to increase his profits. "[I]nitiative, not efficiency, is the standard for economic dependence." *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1350 (M.D. Fla. 1997) (internal citation omitted).

That said, the parties vigorously dispute just what the terms of Plaintiff's association with LMT were, and the evidence presented is conflicting and incomplete. While LMT contends that Plaintiff was akin to a partner and his work was "sweat equity" in the nascent enterprise, the fact that Plaintiff never received any compensation in any form for his efforts, including stock options, negates an inference of partnership. On the other hand, the fact that Plaintiff willingly worked "24/7" on this project for many months without *any* compensation is not consistent with the usual employment relationship. Too, the absence of a signed document notwithstanding the parties' stipulation that *something* was signed leaves significant issues with respect to the intent of the parties. These factual issues are critical to evaluating this factor and cannot be summarily resolved at this juncture.  For this reason, legal conclusions regarding this factor cannot be appropriately evaluated on the existing record.  Although this is dispositive to Defendants' motion, in the interest of completeness, the Court will review the remaining factors.

3) Investment in equipment or additional personnel

This factor considers the alleged employee's investment in equipment or materials required for his task, or his employment of workers. *Scantland*, 721 F.3d at 1317. Defendants argue that Plaintiff's contribution to LMT, aside from his expertise, skills and experience, were "his computers, printers, telephone, home office, utilities, and Internet access which were all needed to accomplish his work." (Doc. 50).  While Plaintiff correctly observes that these are common and minor expenses

compared with the capital expenditures LMT invested in infrastructure and design, this factor still cuts in favor of independent contractor status, as Plaintiff fronted all of the day to day expenses required for his work.

4) Special Skills Required

Here, the Court finds the undisputed facts favor independent contractor status. Plaintiff was (and is) highly skilled and could (and, indeed, did) "gain economic independence by the ability to market his skills to a competing employer." *Scantland,* 721 F. 3d at 1318.

5) Permanency of Working Relationship

The fifth factor considers the degree of permanency and duration of the working relationship. The facts here strongly favor an employee relationship. Although his tenure with LMT was not lengthy,[3] it is undisputed that Plaintiff was designated in the corporate leadership structure as head of engineering and LMT named Plaintiff as its Vice-President in public filings. Construing inferences favorably to Plaintiff, the parties intended this to be a permanent (or, at least long-term) position.

6) Integral Part of the Business

The sixth and final factor considers the extent to which the service rendered is an integral part of the alleged employer's business. Here, both sides agree that Plaintiff's services to LMT were an integral part of LMT's business. "Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor." *Rezendes v. Domenick's Blinds & Decor, Inc.*, No. 8:14-CV-1401-T-33TBM, 2015 WL 3484835, at *14 (M.D. Fla. June 2, 2015) (internal citation omitted). This factor favors employee status.

As is clear, the record contains evidence that, construed favorably to Plaintiff, could support a finding of economic dependence sufficient to find Plaintiff to be an employee. However, other evidence supports factors that favor a finding that Plaintiff was an independent contractor.

---

[3]The length of his association is in dispute, but the agreed chronology shows that it was less than two years.

Importantly, the nature and terms of the engagement are critical to the analysis, and are hotly disputed. Accordingly, the Court finds there are material issues of fact as to whether the Plaintiff was Defendants' employee, precluding summary judgment on this issue.

As an additional defense, Defendants claim that the FLSA is inapplicable here due to the exemption set forth in 29 U.S.C. § 213(a)(17).[4] Plaintiff counters that exemptions are an affirmative defense and Defendants have waived this one by failing to plead it.  Even if the exemption was not waived, Plaintiff contends it is inapplicable here as Plaintiff was never paid anything, let alone the amount required in the statute.  Although the Court does not agree that the exemption was waived,[5] it does agree that LMT cannot meet its burden of establishing the applicability of the exemption on these facts.  *See Bergquist v. Fid. Info. Servs., Inc.*, 399 F. Supp. 2d 1320, 1330 (M.D. Fla. 2005) *aff'd,* 197 F. App'x 813 (11th Cir. 2006) (under similar facts, finding "pursuant to 29 C.F.R. § 541.400(b) (2004), computer employees can be exempt under the professional exemption in 29 U.S.C.§ 213(a)(1) if they meet the minimum salary requirements of $455.00 a week, or under the computer employee exemption, 29 U.S.C.§ 213(a)(17), if they meet the minimum hourly requirement of $27.63"). Defendant is not entitled to judgment in its favor on this issue.

---

[4]
(a) Minimum wage and maximum hour requirements: The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to—
* * *
(17) any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—
(A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
(B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
(C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
(D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour;
* * *
29 U.S.C. § 213(a)(17).

[5]As noted above, Plaintiff alleged that he was a "salaried, *non exempt* employee" and Defendants denied that allegation. While it would be more appropriate for Defendants to have raised the issue via affirmative defense, it is not fatal here in view of Plaintiff's allegation and the absence of any prejudice.  *See Berquist v. Fid. Info. Servs., Inc.,* 399 F. Supp. 2d 1320, 1324-26 (M.D. Fla. 2005), discussed herein.

For the foregoing reasons, it is **recommended** that Defendants' motion be **denied** with respect to Counts I and II.

*Breach of Contract (Count III)*

This purports to be a claim for breach of a *written* employment agreement, and pertains to the time period of March 2013 through February 2014 (Doc. 10, ¶ 58). In his Amended Complaint, Plaintiff alleges that:

> 59. Plaintiff and LMT entered into an written employment agreement on or about March 5, 2013 wherein Plaintiff would work for LMT in the position of Vice president of Engineering and Design and LMT would compensate Plaintiff as follows:
> a. Annual base salary of $175,000.00 ($14,583.34 per month),
> b. Annual bonus equal to not less than 20 % ($35,000.00) but not more than 50% ($87,500.00) of his base salary.
> c. Stock options to purchase 45,000 common shares in LMT
> d. 90,000 shares of stock in the company.
> e. Reimbursement for COBRA health insurance until LMT provided health insurance.

(Doc. 10, ¶59).

As noted earlier, Plaintiff has attached the March 5, 2013 letter and is relying on this unexecuted document as evidence of the "written employment agreement." Plaintiff alleges that he "has suffered damages because the Defendants have refused [to] fulfill any of its obligations provided in the employment agreement." *Id.* ¶70.

In their motion, Defendants contend that they are entitled to summary judgment on this count because: 1) there is no written agreement, as it was never signed, and 2) even if it were executed, it is void on its face, due to an expiration date of September 30, 2009, and 3) it calls for SALAKA, a non-lawyer, to provide legal advice, which is unenforceable and "illegal." Plaintiff counters that he "believes he signed the agreement and sent it to LMT on his LMT issued email address but was unable to find the handwritten copy" and due to the dispute as to whether the contract was executed, summary judgment is inappropriate. He further contends that the reference to September 2009 is a scrivener's error, as LMT was not in existence then, and the "legal advice" provision is severable

from the agreement, as it does not go to the essence of the contract.  Upon review, the issuance of

genuine issues of material fact preclude summary disposition.

It is axiomatic that "[w]here one contracting party signs the contract, and the other party

accepts and signs the contract, a binding contract results." *D.L. Peoples Grp., Inc. v. Hawley*, 804 So.

2d 561, 563 (Fla. 1st DCA 2002). The difficulty here is that there is no *evidence* of a contract signed

by either party.  The document claims to be an "employment offer" (Doc. 10, p. 22).[6]  It contains a

signature blank for GEE as "President & COO" and a signature line for SALAKA, under the legend:

"I have read and accept this employment offer from Live Music Tutor, Inc." *Id.* Plaintiff states only

that he "believes" he signed this document; but belief is not proof at the summary judgment stage.

Further, there is nothing to suggest the LMT signed this. "Generally, it is enough that the party against

whom the contract is sought to be enforced signs it." *Dodge of Winter Park, Inc. v. Morley*, 756 So.

2d 1085, 1085-86 (Fla. 5th DCA 2000). *See also Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294,

1305 n. 12 (11th Cir. 2007) (same).[7]

A signature is not the only way to accept a contract, however.  As Judge Covington of the

Tampa Division of this Court has recognized:

> "Under Florida law, '[i]t is well established that a meeting of the minds of the parties
> on all essential elements is a prerequisite to the existence of an enforceable contract
> ...'" *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F.Supp.2d 1311, 1316
> (S.D.Fla.2007) (quoting *Greater N.Y. Corp. v. Cenvill Miami Beach Corp.*, 620 So.2d
> 1068, 1070 (Fla. 3d DCA 1993)). "An unsigned contract may be binding and

---

[6]Indeed, there is an issue regarding whether, at the time the document was tendered to Plaintiff, it was intended to be a finalized contract. The parties have stipulated that, on March 6, 2013, GEE sent an email to Plaintiff, with the subject March 5, 2013 document attached, in which GEE states "… I am attaching an updated agreement with the additional shares *I promised to you* and also salary information. All of the leadership team will have consistent language and content with key responsibilities. *Please review and lets discuss.*" (Doc. 52-21-emphasis added).

[7]The statute of frauds is an affirmative defense that has not been pled here.  Moreover, the terms of the offer are contradictory, but include a provision that the employment is "at will for no specific period of time."  It is worth noting, however, that the requirement that a written agreement be signed to be enforced according to its terms is consistent with the principles underlying Florida's statute of frauds, which provides that any agreement that is not to be performed within the space of one year from its making must be reduced to writing and signed by the party to be charged. § 725.01, Fla.Stat. (2015); *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So.2d 777 (Fla.1966) (oral employment agreement subject to the statute of frauds).

enforceable where the parties perform under the contract, because assent may be shown by the parties' conduct." *Siegel v. Newagecities.com, Inc.*, 920 So.2d 1274, 1276 (Fla. 4th DCA 2006); *see also Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So.2d 500 (Fla. 4th DCA 2003); *Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So.2d 338 (Fla. 3d DCA 2002); *Sosa v. Shearform Mfg.*, 784 So.2d 609 (Fla. 5th DCA 2001).

*United Rentals, Inc. v. Kimmins Contracting Corp.*, No. 8:08-CV-853T-33TBM, 2009 WL 4885028, at *4 (M.D. Fla. Dec. 14, 2009).

Here, the facts construed favorably to Plaintiff, raise a genuine issue as to whether, while Defendant did not perform under the contract in that it did not pay Plaintiff, it nonetheless accepted Plaintiff's performance and "acted as if the provisions of the contract were in force." *Sosa, supra*, 784 So. 2d at 610 ("Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force"). On this record, Defendants have not established that no contract exists. As the existence of an enforceable contract itself is an issue of fair dispute, the objections as to particular terms should also await trial. The motion should be **denied**, as to this count.

### Count IV - Violation of Florida's Minimum Wage Act

The sole arguments advanced by Defendants here are the same arguments advanced with respect to the FLSA claims. The Court finds the same analysis serves to recommend **denial** of the motion as to this count.

### Count V- Unjust Enrichment

In his Amended Complaint, Plaintiff re-alleges the history of the parties dealings and seeks damages for unjust enrichment. In Florida, a claim for unjust enrichment is an equitable claim based on a legal fiction which implies a contract as a matter of law. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th. Cir.1999). Such a contract implied in law, also known as a quasi contract, is established "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.*

Defendants seek dismissal of this count solely because "it is clearly a Florida Common Law claim and this court lacks subject matter jurisdiction as well as diversity jurisdiction," citing 28 U.S.C. § 1367(c). The argument appears to be premised on the unfounded assumption that the Court will grant Defendant's motion with respect to the FLSA claims, leaving only state law claims remaining. The undersigned agrees with Plaintiff that because the Court will maintain jurisdiction over the FLSA claims, it should not decline supplemental jurisdiction over the unjust enrichment claim, as the facts at issue are intertwined with those which give rise to the minimum wage and overtime claims. The motion should be **denied,** as to this count.

### IV. Conclusion

For the foregoing reasons, it is **recommended** that the motion be denied in its entirety.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on January 27, 2016.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy